**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────────

KEVIN THOMAS C.,

                                        Plaintiff,

        v.

                                                        No. 5:20-CV-1037
COMMISSIONER OF SOCIAL SECURITY,                        (CFH)

                                        Defendant.

────────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Law Offices of Kenneth Hiller, PLLC     JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue                KENNETH R. HILLER, ESQ.
Suite 1A
Amherst, New York 14226
Attorneys for plaintiff

Social Security Administration          LUIS PERE, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**[1]

        Kevin Thomas C.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

───────────────────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

Commissioner") denying his application for disability insurance benefits.  <u>See</u> Dkt. No. 1 ("Compl.").  Plaintiff moves for reversal and remand for the determination of benefits. <u>See</u> Dkt. No. 16.  The Commissioner cross moves for judgment on the pleadings.  <u>See</u> Dkt. No. 19.  For the following reasons, the Commissioner's decision is affirmed.

## I. Background

On January 22, 2018, plaintiff filed a Title XVI application for supplemental security income.  <u>See</u> T. at 126-31.[3]  Plaintiff initially alleged a disability onset date of March 1, 2017, which was later amended to March 29, 2019.  <u>See</u> <u>id.</u> at 30, 126.  The Social Security Administration ("SSA") denied plaintiff's claim on March 26, 2018.  <u>See</u> <u>id.</u> at 69.  Plaintiff requested a hearing, <u>see</u> <u>id.</u> at 75, and a hearing was held on October 3, 2019, before Administrative Law Judge ("ALJ") Gretchen Mary Griesler.  <u>See</u> <u>id.</u> at 27-51.  On November 18, 2019, the ALJ issued an unfavorable decision.  <u>See</u> <u>id.</u> at 15-20.  On July 9, 2020, the Appeals Council denied plaintiff's request for review.  <u>See</u> <u>id.</u> at 1-5.  Plaintiff commenced this action on September 2, 2020.  <u>See</u> Compl.

## II. Legal Standards

### A. Standard of Review

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 13.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R.

§ 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has

4

an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since March 29, 2019, his amended alleged onset date.  See T. at 17.  At step two, the ALJ found that plaintiff's "spine disorder" was a severe impairment.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 18. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) except "the claimant can frequently stoop, balance, crouch, crawl, kneel and climb stairs and ramps. The claimant cannot tolerate concentrated exposure to respiratory irritants." Id. At step four, the ALJ determined that plaintiff had no relevant past work. See id. at 21. At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. See id. Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since March 29, 2019, the amended alleged onset date[.]" Id. at 22.

## IV. Arguments[4]

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because she improperly evaluated the medical opinions of record and erred in her consideration of "[p]laintiff's subjective complaints[.]" Dkt. No. 16 at 20; 10-19. The Commissioner argues that the ALJ "properly evaluated the evidence and substantial evidence supports the ALJ's" RFC determination. Dkt. No. 19 at 3.

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

## V. Discussion

### A. RFC Determination

RFC is defined as "what an individual can still do despite his or her limitations. . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Id. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *6 (1985)).

The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  "In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion." Angela G. v. Comm'r of Soc. Sec., No. 5:19-CV-1521 (ML), 2021 WL 22609, at *6 (N.D.N.Y. Jan. 4, 2021) (collecting cases).  Rather, "[a]n ALJ may [] accept portions of a medical opinion that are consistent with the record, and choose not to accept portions

that are inconsistent with the record." Joseph K. v. Comm'r of Soc. Sec., No. 5:17-CV-748 (DJS), 2018 WL 3716780, at *4 (N.D.N.Y. Aug. 2, 2018). "[I]nconsistencies with objective findings can constitute a good reason for rejecting an opinion or accepting parts of the opinion." Angela G., 2021 WL 22609, at *7.

The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted). Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question []; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted); see also Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citation and quotation marks omitted) ("[A]n ALJ is not required to discuss all the evidence submitted, and [his or her] failure to cite specific evidence does not indicate that it was not considered.").

### 1. Evaluation of Medical Opinions

Under the new regulations, which are applicable to plaintiff's claim, the Commissioner no longer gives specific evidentiary weight to medical opinions. See Warren I. v. Comm'r of Soc. Sec., No. 5:20-CV-495 (ATB), 2021 WL 860506, at *4

(N.D.N.Y. Mar. 8, 2021). Rather, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on their supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 416.920c(a)-(c). Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. § 416.920c(a) and (b)(1). The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. Id. § 416.920c(b)(2). "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. § 416.920c(c)(1). "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 416.920c(c)(2).[5]

### a. Consultative Examiner Kalyani Ganesh, M.D.

Dr. Ganesh conducted plaintiff's consultative examination. He opined that plaintiff had no difficulties sitting, standing, or walking, but had mild to moderate limitations carrying, pushing, and pulling. See T. at 214. The ALJ was "persuaded by [this] opinion, because it [wa]s supported by the diagnostic images in [the] record . . . and consistent with her evaluation of the claimant[.]" Id. at 19 (citing T. at 216). The

---

[5] The ALJ is not required to discuss the remaining factors unless he or she finds that two or more medical opinions are equally supported and consistent with the record. See 20 C.F.R. § 416.920c(b)(3).

ALJ explained that Dr. Ganesh's evaluation "showed normal gait, full range of motion of the lumbar spine, negative straight leg raise test, stable joints, no swelling or effusion, physiologic and equal deep tendon reflexes in the extremities, no sensory deficits, 5/5 strength in the extremities, and no muscle atrophy[.]"  Id. (citing T. at 213-14).  The ALJ also found Dr. Ganesh's opinion to be "consistent with progress notes documenting normal musculoskeletal examinations and no neurological deficits[.]"  Id. (citing T. at 254, 256, 258).  In a later portion of her opinion, the ALJ recounted the findings from the "diagnostic image[] in the record[,]" explaining that a February 2018 X-ray "showed evidence of moderate degenerative spondylosis/degenerative disc disease at L4-5 with mild degenerative disc disease at L5-S1, straightening, old mild compression fracture of L1, and transitional L5 vertebral body[.]"  Id. at 19-20 (citing T. at 216).  The ALJ also explained that plaintiff's progress notes showed that "he had good range of motion in his joints including his shoulders, elbows, wrists, hips, ankles, knees, and small joints of his hand and feet[.]"  Id. at 20 (citing T. at 225).

Plaintiff argues that "the ALJ failed to acknowledge the most glaring issue that Dr. Ganesh's handwritten limitations are illegible and appear to contradict the ALJ's RFC finding."  Dkt. No. 16 at 13.  Plaintiff also argues that the ALJ was required to contact Dr. Ganesh to decipher the handwriting.  Dkt. No. 16 at 13-14.  The Commissioner contends that Dr. Ganesh's opinion is legible.  See Dkt. No. 19 at 6.  The Commissioner also argues that although a mild to moderate limitation is inconsistent with medium work, Dr. Ganesh's no-limitation findings, and the omission of any finding related to environmental limitations, supports the ALJ's RFC determination.  See id. at 6-7.

The Court agrees with the Commissioner that Dr. Ganesh's handwritten notation it largely legible.  See Dkt. No. 19 at 6-7.  It indicates, "mild-mod limitation to [indiscernible], carrying, pushing, pulling[.]"  T. at 214.  It is not clear to the Court whether "lifting" is included in Dr. Ganesh's statement.  See id.  Regardless, the ALJ was not required to recontact Dr. Ganesh.  An ALJ "may recontact" a medical source "[i]f the evidence is consistent but [he or she] ha[s] insufficient evidence to determine whether [a claimant] [is] disabled[.]"  20 C.F.R. § 416.920b(2)(i).  "There is no case or statutory precedent that requires an ALJ to re-contact a non-treating source."  Tracy v. Colvin, No. 5:15-CV-1085 (LEK), 2016 WL 3527876, at *8 (N.D.N.Y. June 23, 2016) (emphasis added).  Plaintiff does not identify missing information such that the ALJ had insufficient evidence before her to determine whether he was disabled.  Moreover, during plaintiff's hearing, the ALJ asked plaintiff's representative if there were any objections to the record and he stated there were not.  See T. at 30; see also Lesa T. v. Comm'r of Soc. Sec., No. 5:17-CV-1215 (ATB), 2019 WL 1229082, at *7 (N.D.N.Y. Mar. 15, 2019) (disagreeing with the plaintiff "that the ALJ was under a duty to re-contact" a treating source because "the ALJ had sufficient information to assess the medical opinion evidence and determine [the p]laintiff's RFC" and "[t]he ALJ also made reasonable efforts to ensure that the administrative record was complete[]" by "discuss[ing the p]laintiff's recent medical treatment at length, and stat[ing] that he would request updated records from her providers[.]").

Plaintiff also argues that "Dr. Ganesh's medical opinion does not support the ability to perform the exertional requirements of medium work and perform the specific postural and environmental abilities contained in the RFC finding[.]"  Dkt. No. 16 at 13.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c). This Court has affirmed an ALJ's RFC limiting a plaintiff to medium work where the consultative examiner "opined that plaintiff had no gross limitations with regard to sitting, standing, or walking.  He also opined that [the] plaintiff had 'mild' limitations with regard to lifting, carrying, pushing, and pulling."  Sherrill B. v. Comm'r of Soc. Sec., No. 5:17-CV-754 (ATB), 2018 WL 4150881, at *7 (N.D.N.Y. Aug. 30, 2018) (limiting the plaintiff to walking, standing, and sitting for six hours a day); see also Heburn v. Astrue, No. 6:05-CV-1429 (LEK/DEP), 2009 WL 174941, at *8 (N.D.N.Y. Jan. 23, 2009) (affirming the ALJ's RFC determination limiting the plaintiff to medium work "including the ability to lift and carry up to fifty pounds occasionally and twenty-five pounds frequently; to sit, stand, and walk for six hours in an eight-hour workday" where the consultative examiner "opined that plaintiff has only a mild degree of limitation and lifting, carrying, pushing, and pulling, with no gross limitation noted in sitting, standing, walking, climbing, or bending.").

The ALJ limited plaintiff to medium work "except [he] can frequently stoop, balance, crouch, crawl, kneel and climb stairs and ramps."  T. at 18.  Dr. Ganesh opined that plaintiff had no limitations walking, sitting, or standing, but had mild to moderate limitations carrying, pushing, and pulling.  See id. at 214.  Dr. Ganesh's opinion does not express an opinion as to the weight plaintiff can carry, push, or pull.  See id.  The ALJ did not reconcile how she was "persuaded by Dr. Ganesh's opinion" with plaintiff's RFC that does not include carrying, pushing, or pulling limitations.  Id. at 19; 18; see

Badaszewski v. Comm'r of Soc. Sec., No. 18-CV-796 (FPG), 2020 WL 486376, at *3 (W.D.N.Y. Jan. 30, 2020) (remanding because "the ALJ purported to give 'great weight' to [an] opinion without any caveats . . . [and a]n explanation is necessary to permit meaningful judicial review and ensure that an ALJ does not simply cherry pick evidence supporting his ultimate conclusion."). However, the ALJ "was under no obligation to accept" Dr. Ganesh's entire opinion. Jeffrey G. v. Comm'r of Soc. Sec., No. 5:20-CV-1016 (ATB), 2021 WL 4844146, at *10 (N.D.N.Y. Oct. 18, 2021) (affirming where the ALJ found the consultative examiner's opinion to be "persuasive" but did not include a limitation on turning the head or looking up and down despite the examiner reaching a "moderate" limitation). The ALJ sufficiently reviewed, and explained her reliance on, Dr. Ganesh's consultive examination findings, the X-ray results, treatment notes and plaintiff's testimony. See T. at 19-21.

As the ALJ explained, the record reflects that plaintiff had degenerative changes in his spine; a normal gait and stance; full ranges of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles; intact dexterity and grip strength; and "[s]trength 5/5 in the upper and lower extremities." T. at 214, 216, 254, 256, 258. The records also reveal that plaintiff did not use an assistive device. See id. at 213. Finally, plaintiff testified that he could "probably" carry fifty pounds; carried the groceries and laundry; and helped his father, who has Parkinson's, get up after he has fallen. Id. at 40-41. Therefore, despite declining to include Dr. Ganesh's mild- to moderate-limitations with the RFC, or discuss why she rejected them, the Court finds no error in the ALJ's review of Dr. Ganesh's opinion. The ALJ appropriately explained her rationale in weighing the various medical opinions, the medical treatment evidence,

plaintiff's testimony, and activities of daily living.  See Raymonda C. v. Comm'r of Soc. Sec., No. 3:19-CV-0178 (GTS), 2020 WL 42814, at *4 (N.D.N.Y. Jan. 3, 2020) ("As to the limitations . . . that the ALJ declined to adopt, the ALJ provided ample good reasons for his actions . . . [because] the ALJ discussed the medical treatment evidence and [the p]laintiff's reported daily activities that were inconsistent with these opined limitations."); Jacob M. v. Comm'r of Soc. Sec., No. 20-CV-1093-FPG, 2022 WL 61007, at *3 n.4, 6 (W.D.N.Y. Jan. 6, 2022) (affirming where although "the ALJ did not expressly list [his] reasons" for discounting certain limitations, "his rationale can be gleaned from the decision as a whole" because he reviewed the plaintiff's activities of daily living and the absence of records indicating more severe issues).  Finally, plaintiff does not identify records supporting greater restrictions such that remand would be warranted.  See Brenden R. v. Comm'r of Soc. Sec., No. 5:20-CV-821 (DNH), 2021 WL 5965164, at *6 (N.D.N.Y. Dec. 15, 2021) ("The burden is on plaintiff to show that the record evidence demands a more restrictive RFC[.]").

**b. State Agency Medical Consultant R. Mohanty, M.D.**

The ALJ next reviewed Dr. Mohanty's non-treating and non-examining disability evaluation.  Based on a review of the record, Dr. Mohanty determined that plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand, walk, and sit for six hours; was unlimited in his ability to push and pull; and could frequently climb, balance, stoop, kneel, crouch, and crawl.  See T. at 56-57.  He based these conclusions on plaintiff's "[c]hronic fatigue and some mild to moderate degenerative changes to the L/S spine."  Id. at 56-57.  Finally, Dr. Mohanty determined that plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, and humidity;

14

and "even moderate exposure" to "[f]umes, odors, gases, poor ventilation, etc." Id. at 57-58.  The ALJ found Dr. Mohanty's opinion to be "less persuasive than Dr. Ganesh's opinion[.]"  Id. at 19.  The ALJ found that "the lifting/carrying restrictions [were] inconsistent with the claimant's testimony that he could lift 50 pounds . . . [and were] not supported by the consultative evaluation, which showed full strength in the upper extremities, full range of motion of the upper extremities, no sensory deficits, and no muscle atrophy evident[.]"  Id. at 19-20 (citing T. at 214).  As to environmental limitations, the ALJ explained that she "adopted some of the environmental restrictions identified by Dr. Mohanty, because they are consistent with the claimant's testimony, but did not include avoiding extreme temperatures and humidity since his treating naturopathic doctor[, Kevin L. Conroy, N.D.,] advised that he could function normally outdoors[.]"  Id. at 20 (citing T. at 204).

Plaintiff argues that ALJ inappropriately relied on Dr. Conroy's opinion which "did not provide a function-by-function medical opinion[.]"  Dkt. No. 16 at 14.  Plaintiff contends that "had Dr. Mohanty's complete opinion relating to environmental limitations [been] credited, then all medium work would have been eliminated."  Id.  Plaintiff also argues that Dr. Mohanty's opinion is the only function-by-function opinion in the record and "[t]he ALJ created a gap in the record by discounting the only opinion addressing all areas of functioning[.]"  Id. at 15 (relying on Travis L. v. Saul, No. 3:19-CV-663 (CFH), 2020 WL 5633823, at *10 (N.D.N.Y. Sept. 21, 2020)).  Plaintiff also asserts that the ALJ inappropriately relied on plaintiff's testimony to discount Dr. Mohanty's opined physical limitations.  See id. at 13.

15

This Court has remanded where the ALJ found "the only opinion in the medical record that addressed plaintiff's exertional limitations" to be vague and instead relied more heavily on the plaintiff's activities of daily living in determining the plaintiff's RFC. Travis L., 2020 WL 5633823, at *9.  However, here, Drs. Ganesh, Mohanty, and Conroy addressed plaintiff's exertional limitations.  See T. at 56-58, 204, 214-14.  Moreover, that Dr. Mohanty's opinion provides a function-by-function analysis makes it no more persuasive.  Rather, the ALJ was required to consider the persuasiveness of the opinion based, "most important[ly,]" on its consistency with the entire record and the supportability Dr. Mohanty's explanations and cited records provided.  20 C.F.R. § 416.920c(b)(2).  The ALJ did so, noting that Dr. Mohanty's opinion that plaintiff could occasionally lift or carry twenty pounds was inconsistent with plaintiff's testimony and was unsupported by Dr. Ganesh's consultative examination findings of full strength and range of motion in plaintiff's upper extremities.  See T. at 19, 214.  At plaintiff's hearing, the ALJ asked whether his CFS "affect[s] [his] ability to pick things up[.]"  Id. at 40.  Plaintiff said, "[n]o," and when asked "how much" he could pick up, plaintiff responded, "I'm weaker now than I used to be, I don't know.  Probably, I don't really know, probably 50 pounds, maybe, I don't know."  Id.  How the ALJ chose to resolve the inconsistency between Dr. Mohanty's opinion and plaintiff's testimony is not for this Court to second guess.  See Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order) ("[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record."); see also Carvey v. Astrue, 380 F. App'x 50, 52 (2d Cir. 2010) (summary order) ("Moreover, in his hearing testimony, [the plaintiff] acknowledged that he could carry five to ten pounds.  This record provides a sufficient

16

basis for the ALJ's decision not to give controlling weight to a treating physician opinion that [the plaintiff] could do no lifting.").

Similarly, the ALJ identified an inconsistency, regarding plaintiff's environmental limitations, between Dr. Mohanty's opinion compared to Dr. Conroy's opinion and plaintiff's testimony. See T. at 19. Dr. Mohanty determined that plaintiff should avoid concentrated exposure to extreme cold and heat, and humidity; and "even moderate exposure" to fumes, odors, dusts, gases and poor ventilation. Id. at 58; 57. Dr. Conroy explained that plaintiff "is not able to function in any environment w/ toxic synthetic chemicals" but "is highly functional in any pristine environment (normally outdoors consuming only organic food[).]" Id. at 204. Dr. Conroy's records indicate that plaintiff's CFS was "aggravated by dust and synthetic chemicals" but he had been "in much better spirits and reported this is primarily due to being able to sleep outside[.]" Id. at 205. Other records also indicate that plaintiff reported that his symptoms "get worse when he is exposed to the diff[erent] environmental chemicals[,]" but he "denie[d] hot/cold intolerance[.]" Id. at 253; 242. Plaintiff testified that "the main environmental things [that impact his symptoms] are anything chemical in orientation . . . usually through cleaning products . . . dust and mold, you know is another thing." Id. at 46. Plaintiff explained that as to heat, humidity, and cold temperature, the heat and cold minimally affect him. See id. Specifically, he testified that as to the heat, "I think that's everybody. I don't think I'm abnormal in terms of heat will – probably for me, I have to rest more than the average person would and I can't be out in it very long without it realty fatiguing me." Id. As for the "cold, just cause yeah, it takes energy to deal with the cold. So, I am fatigued a little bit more dealing with that." Id.

17

Plaintiff does not identify any records, other than Dr. Mohanty's opinion, that indicate an inability to tolerate extreme heat and cold or humidity.  See Dkt. No. 16 at 14-15; but see Benjamin M. v. Comm'r of Soc. Sec., No. 5:18-CV-1079 (GTS/ATB), 2019 WL 6896722, at *3 (N.D.N.Y. Nov. 21, 2019), report and recommendation adopted, 2019 WL 6895247 (N.D.N.Y. Dec. 18, 2019) (emphasis added) (remanding where the ALJ gave "great weight" to the "non-treating, non-examining expert" who "concluded that plaintiff could 'never' tolerate exposure to respiratory irritants such as dust and odor[]" but "concluded, without explanation, that plaintiff had an RFC to perform work in environments with some amount of exposure to such elements" and it was "the only expert opinion of record regarding plaintiff's non-exertional limitations[.]"). Although plaintiff testified that after "very long" in the heat he would be fatigued and that the cold "fatigue[s him] a little bit[,]" and Dr. Mohanty opined greater environmental limitations, Dr. Conroy noted that plaintiff could function outdoors and had been sleeping outside, and Dr. Zafar's notes did not reveal any subjective complaints or objective findings related to an intolerance to extreme temperatures or humidity.  T. at 46, 57, 204-205, 242-258; see Seeley v. Comm'r of Soc. Sec., No. 1:11-CV-0757 (GTS), 2012 WL 5334746, at *3 (N.D.N.Y. Oct. 26, 2012) (citation omitted) ("If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'").

As to plaintiff's ability to tolerate other respiratory irritants, Dr. Conroy and Dr. Mohanty appear to have indicated that plaintiff had more severe restrictions than the RFC reflects.  See T. at 58, 204.  Plaintiff argues only that "[t]he ALJ equated a pristine

environment to the ability to tolerate any weather phenomenon, including extreme temperatures and humidity." Dkt. No. 16 at 14. Plaintiff does not argue that the ALJ erred in her consideration of Dr. Mohanty's opinion or RFC determination as it relates to plaintiff's ability to tolerate other respiratory irritants. See Dkt. No. 16 at 14; see also Christine M. v. Comm'r. of Soc. Sec., No. 1:20-CV-01226 (MJR), 2022 WL 130900, at *8 (W.D.N.Y. Jan. 14, 2022) ("Although [the] plaintiff argues that the evidence warranted additional RFC restrictions for migraines, she has not supported her conclusion with reference to any evidence that the ALJ overlooked or improperly discredited."). Therefore, the Court finds no error in the ALJ's review of Dr. Mohanty's opinion. See Dale A. M. v. Comm'r of Soc. Sec., No. 5:19-CV-1150 (FJS), 2021 WL 1175160, at *24 (N.D.N.Y. Mar. 29, 2021) ("[T]he ALJ's decision to discount [an opinion] was based on sufficient and consistent evidence, i.e., other medical opinions and supporting medical records.").

### c. Kevin Conroy, N.D.[6]

Dr. Conroy handwrote his opinion on a fax from the SSA that requested a "statement based on [his] findings . . . [and his] opinion about [plaintiff's] ability to do work-related physical or mental activities . . . ." T. at 204. Dr. Conroy wrote, "[p]atient is not able to function in any environment w/ toxic or synthetic chemicals. He is highly functional in any pristine environment (normally outdoors consuming only organic food[)]." Id. The ALJ determined that Dr. Conroy's opinion was "not supported by treatment notes from his office, which do[] not contain any abnormal clinical findings on

---

[6] Doctor of Naturopathy.

physical examinations[.]" <u>Id.</u> (citing T. at 205, 229).[7]  The ALJ also recounted that "Dr. Conroy noted that the claimant appeared in better spirits after adjusting his diet and indicated that he was not using or needing enzymes as prescribed[.]" <u>Id.</u> (citing T. at 205).  Finally, the ALJ determined that "Dr. Conroy . . . failed to identify any objective clinical findings to support [his] opinion[]." <u>Id.</u> at 20.

Plaintiff challenges the ALJ's decision to simultaneously find Dr. Conroy's opinion unpersuasive but use the opinion to discount some of Dr. Mohanty's environmental limitations.  <u>See</u> Dkt. No. 16 at 5-6.  Dr. Conroy's progress note reflects that plaintiff's symptoms were "aggravated by dust and synthetic chemicals[.]"  T. at 205.  The ALJ recounted plaintiff's testimony "that he feels more fatigue when dealing with extreme cold and being exposed to chemicals."  <u>Id.</u> at 19, 46.  However, it was appropriate for the ALJ to conclude that Dr. Conroy's opinion was unsupported because there is nothing objective to corroborate the opinion that plaintiff cannot "function in any environment" with chemicals, and Dr. Conroy did not identify objective evidence indicating otherwise.  <u>Id.</u> at 204, 20; <u>see</u> 20 C.F.R. § 404.1520c(c)(1) (explaining that supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive" it is.).  Importantly, the ALJ's RFC determination did not need to perfectly correspond with any one medical opinion; rather, the ALJ was entitled to weigh the record as a whole in determining plaintiff's RFC.  <u>See</u> <u>Jeanette S. U. v. Saul</u>, No. 3:18-CV-01045 (DNH/TWD), 2020 WL 1494168, at *5 (N.D.N.Y. Mar. 11, 2020), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2020 WL 1493917 (N.D.N.Y. Mar. 26, 2020) ("[I]n

---

[7] The two records the ALJ cites from Dr. Conroy's office are identical progress notes from a visit on May 31, 2017.  <u>See</u> T. at 205, 229.

formulating [the p]laintiff's RFC, the ALJ was not required to accept every limitation in the opinions of [the] treating providers . . . nor craft an RFC that mirrored any of the medical opinions.").  The ALJ sufficiently reviewed Dr. Mohanty's and Dr. Conroy's opinions, the objective record, and plaintiff's testimony to determine that plaintiff "cannot tolerate concentrated exposure to respiratory irritants."  T. at 18; see Bonet ex rel. T.B., 523 F. App'x. at 59 ("[W]hether there is substantial evidence supporting the appellant's view is not the question," instead the question to be answered by the Court is "whether substantial evidence supports the ALJ's decision.").

Plaintiff also argues that the ALJ was required to recontact Dr. Conroy because his opinion was not delivered as a "function-by-function" analysis.  Dkt. No. 16 at 16. "An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record."  Cheryl E. v. Comm'r of Soc. Sec., No. 5:20-CV-0867 (ML), 2021 WL 5964890, at *8 (N.D.N.Y. Dec. 15, 2021).  "However, the ALJ's duty to develop the record is not unlimited and is discharged when the ALJ possesses [the claimant's] complete medical history and there are no obvious gaps or inconsistencies in the record."  Id. (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)) (quotation marks omitted) (alteration in original).  Plaintiff does not identify a gap in the record that would have triggered the ALJ's duty to develop the record or to recontact Dr. Conroy. See Dkt. No. 16 at 16.  Rather, he summarily states, without citing to any record, that Dr. Conroy "believed plaintiff was unable to work, and, due to the nonadversarial and informal nature of Social Security proceedings, the ALJ was required to further develop the record before relying upon her own lay opinion."  Id.  Nowhere in Dr. Conroy's opinion or progress note does he state that plaintiff cannot work.  See T. at 204-208.

Regardless, "the *ultimate issue* of whether one can perform 'regular or continuing work' and is, therefore, not disabled, is a determination that is reserved to the Commissioner." Jackson L. v. Comm'r of Soc. Sec., No. 5:19-CV-786 (ATB), 2020 WL 3077051, at *10 (N.D.N.Y. June 10, 2020) (quoting Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) (summary order)).  Therefore, the Court finds untenable plaintiff's argument that the ALJ was required to recontact Dr. Conroy.

### d. Sara Zafar, M.D.

Dr. Zafar completed a "Medical Examination for Employability Assessment" wherein she determined that because of plaintiff's CFS and fibromyalgia, plaintiff would be "unable to participate in any activities except treatment or rehabilitation" for four to five months.  T. at 259-60.  The ALJ explained that "Dr. Zafar's statement is on an issue reserved to the Commissioner, and is inherently neither valuable nor persuasive to the Social Security Administration 20 CFR 416.920b(c)."  Id. at 20.  The ALJ found that "Dr. Zafar's opinion [wa]s also not supported by progress notes from her office, which showed normal physical examinations and no imaging or evaluation for his reported chronic fatigue[.]"  Id.  The ALJ observed Dr. Zafar's note that the claimant was not taking any active medications.  See id. (citing T. at 243, 248, 251, 254).  The ALJ also acknowledged that Dr. Zafar's opinion did not identify objective evidence to support her opinion.  See id. at 20.

Plaintiff argues that "the ALJ was duty bound to obtain a more detailed statement instead of rejecting the opinion[]" because Dr. Zafar did not provide a function-by-function opinion.  Dkt. No. 16 at 16.  As the Court explained in reviewing Dr. Conroy's opinion, there is no requirement that an ALJ recontact a treating source because they

did not provide a function-by-function opinion.  See supra at 20-21.  Rather, the ALJ

would only need to do so if there were "obvious gaps and inconsistencies in the medical

record[.]"  Cheryl E., 2021 WL 5964890, at *8.  As plaintiff has failed to identify any gaps

in the record, the Court disagrees that the ALJ had any obligation to recontact Dr. Zafar.

Moreover, the ALJ appropriately discounted Dr. Zafar's opinion on plaintiff's ability to

work because it is a decision reserved for the Commissioner.  See Delossantos v.

Comm'r of Soc. Sec., No. 7:16-CV-0713 (GTS), 2017 WL 4011265, at *7 (N.D.N.Y.

Sept. 11, 2017) ("Notably, whether a claimant is disabled is an issue reserved to the

Commissioner, and an opinion indicating that a claimant is 'disabled' or 'unable to work'

is not entitled to special deference.").  The ALJ also appropriately discounted the

opinion because it was not supported by Dr. Zafar's treatment notes which reflected

continuously normal examinations, and she did not otherwise identify objective support

for her opinion.  See T. at 20, 244-58; see 20 C.F.R. § 416.920c(b)(2) (requiring

consideration of the supportability factor).  As such, the Court finds no error in the ALJ's

review of Dr. Zafar's opinion.

In sum, based on the reasons set forth above, remand is not warranted as it

relates to the ALJ's consideration of the medical opinions of record.  See, e.g., Justin S.

v. Comm'r of Soc. Sec., 5:20-CV-1575 (ATB), 2022 WL 306445, at *11 (N.D.N.Y. Feb.

2, 2022) ("[T]he ALJ appropriately evaluated the medical opinions of record to reach an

RFC determination that was supported by substantial evidence, including the medical

opinions of record, [the] plaintiff's treatment records during the period of alleged

disability, and [the] plaintiff's testimony as to his own activities.").

## 2. Consistency of Allegations

Plaintiff argues that the ALJ (1) erred by rejecting his "complaints relating to [his] chronic fatigue syndrome" and "failed to consider the nature of chronic fatigue syndrome[,]" and (2) failed "to consider good causes" for plaintiff's noncompliance with medication and treatment.  Dkt. No. 16 at 20-21.  Plaintiff also argues that "[t]he RFC finding did not account for breaks, changing positions, and absence related limitations due to flares, and it simply untrue that the ALJ accounted for [p]laintiff's additional conditions in which the ALJ deemed non-severe."  Id. at 23.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)); see SSR 16-3p: Titles II and XVI Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *1-2 (Oct, 25, 2017).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(a)).  "While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence."  Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *10 (N.D.N.Y. June 9, 2021) (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ "is not required to accept the claimant's subjective

24

complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier, 606 F.3d at 49 (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

"Under SSR 16-3p, when evaluating a claimant's symptom intensity, '[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record.'" Kearney v. Berryhill, No. 1:16-CV-00652 (MAT), 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (alteration in original) (quoting Vered v. Colvin, No. 14-CV-4590 (KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)). The ALJ must "clearly demonstrate[] [that] he considered the entire case record . . . as required by SSR 16-3p." Id. ("The ALJ provided significant detail regarding the basis of this finding, noting there is little objective evidence of record to support the alleged severity of the symptoms [the] [p]laintiff described at the hearing."); see, e.g., Michael H., 2021 WL 2358257, at *11 (affirming the ALJ's determination where the ALJ "examine[d] inconsistencies in the record" between the plaintiff's testimony and the medical records and opinions).

### a. ALJ Decision

The ALJ first addressed plaintiff's CFS in her step-two analysis, explaining that it was not a severe impairment because although "there are references to chronic fatigue immune dysfunction, [plaintiff] denied any hospitalization, diagnostic testing, or treatment for this condition[.]"  T. at 17 (citing T. at 212)  The ALJ explained that "[p]rogress notes confirmed that [plaintiff] has not had any imaging or specialist

evaluation for his reported chronic fatigue . . . [h]is ANA and ANCA screening were all negative, and his inflammatory markers were negative[.]" Id. (citing T. at 222, 245). The ALJ also reviewed plaintiff's naturopathic progress note which reflected no abnormal findings during his physical examination. See id. (citing T. at 205).  Finally, the ALJ noted that "[d]espite complaints of left knee pain, an x-ray of his left knee, obtained in February 2018, showed no significant bony abnormality . . . [and h]e also had a normal gait and full range of motion of the knees[.]" Id. (citing T. at 213-14, 217).

The ALJ next determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record. See T. at 19.  The ALJ summarized plaintiff's subjective allegations:

> he testified that he requires more rest than the average person does, and that he feels more fatigued when dealing with extreme cold and being exposed to chemicals.  The claimant indicated that he goes to the grocery store daily, because he is unable to go for more than ten minutes each time[.]  He stated his day is spent meditating, walking for 25 minutes, and resting[.]  The claimant avoids certain foods due to fibromyalgia pain, and takes herbal supplements[.]  The claimant can only sit for 40 minutes and stand for 20 minutes before becoming fatigued[.]

Id.  As to the objective medical evidence, the ALJ explained that a February 2018 X-ray "showed evidence of moderate degenerative spondylosis/degenerative disc disease at L4-5 with mild degenerative disc disease at L5-S1, straightening, old mild compression fracture of L1, and transitional L5 vertebral body[.]" Id. at 20 (citing T. at 216).  The ALJ recounted Dr. Ganesh's consultative examination findings indicating that plaintiff "had a normal gait, full range of motion of the lumbar spine, negative straight leg raise test, stable joints, no swelling or effusion, physiologic and equal deep tendon reflexes in the extremities, no sensory deficits, 5/5 strength in the extremities, and no muscle atrophy[.]" Id. (citing T. at 213-14).  The ALJ also explained that

26

"[p]rogress notes routinely documented normal musculoskeletal examinations and no neurological deficits . . . [and h]is gait was described as normal[.]"  Id. (citing T. at 196, 198, 243, 254, 256, 258).  As for plaintiff's fibromyalgia, the ALJ recounted that "rheumatology records indicated that the claimant was feeling 'better'"; "[w]ith the exception of mild tenderness along the thoracic spine, . . . claimant's musculoskeletal and neurological examinations were within normal limits[;] . . . he had good range of motion in his joints including his shoulders, elbows, wrists, hips, ankles, knees, and small joints of his hand and feet"; and "he ha[d] only been treated twice by [the Rheumatology] office[.]"  Id. (citing T. at 219-20, 222, 225).  Finally, the ALJ explained that plaintiff "acknowledged that he could lift 50 pounds, which supports the lifting/carrying abilities"; "[h]e also indicated that he has not been involved in any specific treatment, nor has he undergone any testing"; and "[h]e was not in favor of taking any medication[.]"  Id. (citing T. at 212, 222).

### b. Consideration of Plaintiff's CFS

As plaintiff states, numerous providers diagnosed him with CFS.  See Dkt. No. 16 at 22; T. at 205, 226, 243.  However, a diagnosis does not establish that an impairment is severe or that subjective allegations are consistent with the objective evidence.  See Titles II & XVI: Evaluating Claims Involving Chronic Fatigue Syndrome, SSR 14-1P, 2014 WL 1371245, at *7 (S.S.A. Apr. 3, 2014) (explaining the two-step consistency of allegations analysis in the context of chronic fatigue syndrome).  Although plaintiff testified that he takes breaks after engaging in most activities, there is nothing in the medical records to indicate the necessity for breaks and time to change positions—and plaintiff does not point to anything indicating otherwise.  See T. at 42-44.  After finding

plaintiff's CFS to be non-severe, the ALJ explicitly discussed plaintiff's testimony that he requires more sleep than most people, feels more tired when dealing with extreme cold and chemical exposure, and cannot grocery shop for more than ten minutes at a time. See id. at 17-19; see also Jeanette J. v. Saul, No. 6:19-CV-0795 (ML), 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) ("It is proper to read the ALJ's decision as a whole and it would be a needless formality to have the ALJ repeat substantially similar factual analyses."); Flower v. Comm'r of Soc. Sec., No. 6:16-CV-1084 (GTS), 2018 WL 895579, at *5 (N.D.N.Y. Feb. 13, 2018) (finding that the ALJ's conclusion "that [the p]laintiff's CFS and sleep apnea were not medically determinable impairments . . . is at most harmless error because, even if [the p]laintiff had medically determinable impairments of CFS and sleep apnea, the ALJ considered [the p]laintiff's allegations of chronic fatigue and pain in association with fibromyalgia at subsequent steps in light of her finding that Plaintiff's fibromyalgia was severe.").  As such, the ALJ did not err because she found plaintiff had a severe impairment and considered all of plaintiff's symptoms, including those related to CFS, in subsequent portions of her decision.

### c. Noncompliance with Medication

SSR 16-3p explains that when an ALJ finds a plaintiff's symptoms inconsistent with the objective findings in the record, the ALJ must consider the

> possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.  We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

2017 WL 5180304, at *9 (emphasis omitted).  During plaintiff's hearing, plaintiff's representative asked him whether he was "treating with exclusively Dr. Zafar[.]"  T. at

38.  Plaintiff explained that he was treating with Dr. Zafar and "Dr. Garg" for rheumatology.  Id. at 39.  The representative responded, "[o]kay, and a couple of visits with rheumatology, but they're not prescribing you any medications and you don't want to take any medication."  Id.  Plaintiff stated, "[n]o, she, she said you know, I'm using herbal supplements and things like that and she felt doing medications, you know, she felt they were, those were good approaches and that unless my condition changed, she didn't need to, to see me, so, again, so she did a number of blood tests."  Id.

Prior to seeing Dr. Zafar, plaintiff met with Adam Duckett, D.O., to "establish care."  T. at 242.  Dr. Duckett noted that

> patient has not seen a doctor in over 15 years.  He does not take any medication.  He has not been out on disability in the past.  He was telling me that he needs a diagnosis of chronic fatigue syndrome in order to be able to get this disability.  He is requesting a referral to neurology for further assessment.  I will certainly do that for him.  Patient does not want to take any medications for treatment, stating that they have all failed several years ago and he does not want to try again.  He tries to take a natural approach to his treatments with homeopathic remedies.  Will follow.

Id. at 242-43.  In June 2018, Dr. Zafar noted that plaintiff "does not want to try medications at this time.  [W]as referred to neurology and Rheumatology, refused."  Id. at 247.  In July 2018, Dr. Zafar explained that plaintiff "does not want to try medications as he has had [side effects] from it[.]"  Id. at 251.  In September 2018, plaintiff reported that he was "taking OTC herbal/holistic medications to help" with his chronic fatigue symptoms.  Id. at 253, 255, 257.  During his rheumatology workup, Megha Garg, M.D., noted that plaintiff was "not in favor of taking medications."  Id. at 222.

As to treatment plans other than medication, the record reflects that plaintiff's "care plan" was to continue with follow-up appointments.  See T. at 245, 248.  Dr. Zafar

29

noted that plaintiff "ha[d] not had any imaging or specialist evaluation" and he "refuse[d]" physical therapy. Id. at 248. In July and September 2018, Dr. Zafar noted that plaintiff refused physical therapy or imaging because of insurance problems. See id. at 251, 254. However, treatment notes from January and July 2019 indicated that plaintiff was undergoing screenings and lab tests. See id. at 256, 258. During plaintiff's hearing, plaintiff confirmed that he had obtained health insurance. See id. at 38.

The ALJ reviewed the record and accurately reiterated in her decision that plaintiff had not undergone specific testing and was not in favor of taking medication for his CFS. See T. at 20. During plaintiff's hearing, he was questioned about his failure to take medication and he explained that he was instead using herbal supplements and had only undergone blood tests. See id. at 39; cf. Shane C. v. Comm'r of Soc. Sec. Admin., No. 1:20-CV-0895 (DEP), 2021 WL 5906236, at *11 (N.D.N.Y. Dec. 14, 2021) (finding no error under SSR 16-3p where the ALJ "did not fail to consider [the] plaintiff's efforts to engage in treatment; rather, she found that the evidence documenting that treatment did not reveal either subjective or objective support for [the] plaintiff's reports of greater limitation[.]"). As the ALJ asked plaintiff was asked about his decision to not take medications and accurately noted that plaintiff was not in favor of doing so, the Court finds no error in the ALJ's consideration under SSR 16-3p.[8] See T. at 20, 39; see also David F. v. Comm'r of Soc. Sec. Admin., No. 3:21-CV-00315 (SALM), 2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (remanding where "[o]ther than noting [the]

---

[8] Plaintiff also summarily argues that under SSR 18-3p "[t]he ALJ was [] required to determine whether there was good cause for allegedly failing to follow prescribed treatment." Dkt. No. 16 at 23-34. This is inapplicable because plaintiff was not prescribed medications or a treatment plan that he then did not follow; rather, he repeatedly expressed that he did not want to be prescribed medications and preferred holistic alternatives, which his providers abided by. See T. 222, 242-43; see also Titles II & XVI: Failure to Follow Prescribed Treatment, SSR 18-3P, 2018 WL 4945641, at *2-3 (S.S.A. Oct. 2, 2018).

plaintiff's holistic treatment, the ALJ did not otherwise acknowledge or address any of the reasons offered by plaintiff to explain his 'conservative' treatment . . . [but] the ALJ stated that plaintiff 'did not take medication[,]' without any consideration of plaintiff's reason for such avoidance -- the fear of side effects.").

### d. Activities of Daily Living

The ALJ appropriately considered plaintiff's actives of daily living.  In determining that plaintiff's subjective complaints were inconsistent with the objective record, the ALJ explained that plaintiff stated he could cook, clean, do laundry, go shopping, and attend to his personal needs.  See T. at 21.  The ALJ also noted that plaintiff did yoga, went for walks, attended meditation group, and "engage[d] in childcare[.]"  Id.  "[W]hile a claimant need not be an invalid to be found disabled under the Social Security Act, . . . consideration of daily activities [is] fair game when assessing the intensity and persistence of a plaintiff's symptoms[.]"  Julie B. v. Comm'r of Soc. Sec., No. 5:20-CV-977 (DNH), 2022 WL 58384, at *7 (N.D.N.Y. Jan. 6, 2022) (citations and quotation marks omitted).  The record indicates that plaintiff goes grocery shopping;[9] helps carry the laundry for his mother; takes the garbage to the dump once a week; helps his father get up when he falls; and meditates, does yoga, and goes for a walk every day.  See T. at 40-44.  The ALJ did not rely solely on these activities to discount plaintiff's subjective complaints; rather, the ALJ's consideration of these activities in conjunction with plaintiff's refusal to take prescription medication and the objective record constitutes substantial evidence in support of plaintiff's RFC.  See Shane C., 2021 WL 5906236, at

---

[9] Plaintiff testified that he "go[es] grocery shopping [for his parents] once a week, which usually takes [him] about 45 minutes" and he goes grocery shopping for himself "every day" for "about five or ten minutes because it's harder for [him] to go 40, 45 minutes."  T. at 40-41.

*12 (affirming the ALJ's consistency analysis "[b]ecause the ALJ provided multiple specific and valid reasons declining to accept fully plaintiff's subjective reports of limitations[.]"); Rolland M. v. Saul, No. 8:19-CV-1624 (MAD), 2020 WL 7356716, at *5 (N.D.N.Y. Dec. 15, 2020) (explaining the ALJ's consideration of the plaintiff's complaints, daily activities, and "effort to work" and stating that "[p]erhaps alone each of these reasons might be insufficient, but the ALJ properly considered the totality of multiple statements made by [the p]laintiff as to his impairments in weighing his credibility.").  As the Court finds no error in the ALJ's consistency analysis, remand is not warranted on this ground.

### B. ALJ's Step-Five Determination

Plaintiff contends that "[t]he ALJ did not identify evidence consistent with the ability to perform medium work without the environmental limitations" and that the vocational expert's ("VE") testimony cannot form "the basis for the RFC finding."  Dkt. No. 16 at 9.

During plaintiff's hearing the ALJ presented a hypothetical to the VE limiting plaintiff to not being able to "tolerate concentrated exposure to respiratory irritants, extreme cold, heat, or humidity."  T. at 48.  The VE explained that "[t]here's lots of jobs, however, when I go through the environmental conditions, there's always issues of extreme cold, heat, humidity, atmospheric conditions and irritants . . . [t]hat would eliminate medium level work at the unskilled level[.]"  Id. at 49.  The ALJ then asked, "what if I amended it to provide that the individual . . . cannot tolerate concentrated exposure to respiratory irritants, but remove the heat, cold, and humidity issue."  Id.

The VE then testified that there would be jobs available at the medium-work level.  See id.

When an ALJ uses a VE, the ALJ "must present the VE with a set of hypothetical facts to determine whether plaintiff retains the capacity to perform any specific job."  Gill v. Astrue, No. 1:10-CV-985 (MAD/ATB), 2011 WL 4352410, at *7 (N.D.N.Y. Sept. 15, 2011) (citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)), report and recommendation adopted, No. 1:10-CV-985 (MAD/ATB), 2011 WL 4352719 (N.D.N.Y. Sept. 15, 2011).  An ALJ may rely on a VE's testimony regarding a hypothetical as long as the hypothetical is based on substantial evidence, and accurately reflects the limitations and capabilities of the claimant involved.  See Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order) (internal quotation marks and citations omitted).

The ALJ did not base the RFC determination on the VE's testimony, and instead found that Dr. Mohanty's cold, heat, and humidity limitation was inconsistent with Dr. Conroy's opinion indicating that plaintiff can function outdoors and with plaintiff's testimony indicating that he was not more than minimally bothered by the heat and cold.  See T. at 19, 46.  The ALJ also did not err in presenting alternative hypotheticals when asking the VE whether there would be work available to plaintiff.  Cf. Harry B. v. Comm'r of Soc. Sec., No. 3:20-CV-227 (ATB), 2021 WL 1198283, at *4 (N.D.N.Y. Mar. 30, 2021) (finding no error at step-five where the RFC was based on substantial evidence and the ALJ presented one hypothetical and "[t]he ALJ then modified the exertional level to sedentary and took out the sit/stand option.  The VE testified that there would still be jobs that plaintiff could perform.").  As this Court has determined that the ALJ's

33

RFC determination is supported by substantial evidence, it also concludes that the ALJ's hypothetical was proper, and her step-five determination is supported by substantial evidence.  See Padilla v. Colvin, No. 10-CV-4762 (CM/FM), 2013 WL 4125039, at *8 (S.D.N.Y. Aug. 15, 2013) (limiting the plaintiff to medium work and explaining that "[b]ecause [the plaintiff] was limited by the requirement that he work in a clean-air environment, however, the ALJ deferred to [the VE's] testimony concerning whether [the plaintiff] was capable of performing jobs that existed in significant numbers in the national economy[]" and "[a]lthough [the plaintiff] complained of occasional dizzy spells, fevers, headaches, and difficulty breathing due to nasal congestion, he did not testify that any of these problems hindered his ability to work.").

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 23, 2022
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge